| 88 | 225 |
| s115 | 29 |
| 115 | 33 |

JOHN N. CHADDOCK v. ALONZO PLUMMER.

*Negligence—Parent placing air-gun in hands of child.*

An air-gun is not so obviously and intrinsically dangerous as to charge a father with negligence in placing it in the hands of his nine-year-old son, and make him liable for injuries sustained by reason of its use by another boy, not a member of his family, to whom it is delivered by his wife, in his absence and without his knowledge or consent.

Error to Berrien.. (O'Hara, J.)· Argued October 14, 1891. Decided October 30, 1891.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*N. A. Hamilton,* for appellant, contended:

1. A man who places in the hands of a child an article of a dangerous character, and one likely to cause injury to the child itself or to others, is guilty of an actionable wrong; citing *Binford v. Johnston,* 82 Ind. 427.

2. Children, wherever they go, must be expected to act upon childish instincts and impulses, and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken; citing *Powers v. Harlow,* 53 Mich. 507; *Harriman v. Railway Co.,* 45 Ohio St. 11 (12 N. E. Rep. 451); *Lane v. Atlantic Works,* 111 Mass. 136.

3. The law requires of persons having in their custody instruments of danger that they should keep them with the utmost care; citing *Dixon v. Bell,* 5 Maule & S. 198.

4. If one is guilty of. negligence in leaving anything dangerous in a place where it is extremely probable that some other person will unjustifiably set in motion to the injury of a third, and if that injury should be so brought about, the sufferer may have

88 MICH—15.

redress by action against both or either of the two, but unquestionably against the first; citing *Lynch v. Nurdin*, 1 Q. B. 29.

5. The gist of the action is not the lawfulness of the act whence the injury proceeded, nor the existence of an evil intention, but is the fault of the defendant in neglecting to exercise such a reasonable degree of skill or diligence, or caution and prudent foresight, as, under the circumstances, might have avoided the injury; citing *Tally v. Ayres*, 3 Sneed, 677.

6. Every person owes a duty to the society in which he lives; and the reasonable care which persons are bound to take in order to avoid injury to others is proportionate to the probability of injury that may arise to others. He who does what is more than ordinarily dangerous is bound to use more than ordinary care; citing *Morgan v. Cox*, 22 Mo. 373.

7. Let us apply this test to this case. Suppose the defendant himself were the party whose eye was shot out by Tabor, and suppose he had brought suit against Tabor. Would not the law say to him, "'You cannot recover; by your own act in leaving the gun where the boy found it, or allowing it to be so left, you contributed to the injury?" Does it not follow that because he thus contributed to the plaintiff's injury he is liable? There is a multiplicity of cases on the subject, among which are the following: *Powers v. Harlow*, 53 Mich. 507; *Binford v. Johnston*, 82 Ind. 426; *Harriman v. Railway Co.*, 45 Ohio St. 11; *Clark v. Chambers*, 3 Q. B. Div. 327; *Tally v. Ayres*, 3 Sneed, 677; *Castle v. Duryee*, 2 Keyes, 169; *Cole v. Fisher*, 11 Mass. 137; *Carter v. Towne*, 98 Id. 567; *McDonald v. Snelling*, 14 Allen, 296; *Vincent v. Stinehour*, 7 Vt. 62; *Vandenburgh v. Truax*, 4 Denio, 464; *Guille v. Swan*, 19 Johns, 381; *Audige v. Gaillard*, 8 La. Ann. 71; *Wright v. Clark*, 50 Vt. 135; *Knott v. Wagner*, 16 Lea, 481 (1 S. W. Rep. 155).

8. The court should have charged, on the facts proven, that the defendant was guilty of negligence; but in any event, it is submitted that, beyond all possible question, the case should have been submitted to the jury with proper instructions as to the law; citing *Carver v. Plank-road Co.*, 61 Mich. 591; *Barnum v. Terpening*, 75 Id. 557; *Engel v. Smith*, 82 Id. 1; *Brezee v. Powers*, 80 Id. 172. And see generally on this subject, 2 Thomp. Neg. 1235—1240.

*George M. Valentine* and *George S. Clapp*, for defendant.

MORSE, J. Plaintiff brought this suit in the Berrien circuit court to recover damages for the loss of his right

eye, which was destroyed by a shot from an air-gun in the hands of a boy named Roscoe Tabor. The circuit judge directed a verdict for the defendant.

The facts proven are substantially as follows: During the last of July or first of August, 1890, the defendant bought an air-gun, and gave it to his son, Harry Plummer, a lad aged about nine years. Defendant also bought at the same time some shot, such as are used in air-guns. Defendant cautioned his son to be careful in using the gun. The shot were all used in about two days, and some time later defendant bought his son more shot, which were used in half a day. No other shot were bought or furnished by the defendant, or by his order, or with his knowledge. Mrs. Plummer, the wife of the defendant, bought her son Harry some shot, which he also fired, except four shot, by one of which plaintiff was injured. On the morning of the accident, September 3, 1890, Harry fired the shot bought by his mother, except the four shot, and put the gun in the storm-house, which was a part of the dwelling, and put the four shot on a table-cloth, and went to school. Mr. Plummer was not at home. The Tabor boy came there with some rutabagas, and began looking and traveling about the premises, and found the gun in the storm-house, and then asked Mrs. Plummer for some shot, and she handed him the four shot which Harry had left on the table. She directed him to shoot at the hen-coop in the rear of the house. The boy fired one shot at the hen-coop, one at an apple tree, and then he went around to the north side of a new house, which Mr. Plummer was building, to a point about a rod east of the front of the new house, and eight or ten feet north of it. The boy was facing the west, and the street was to the west of him, and the street runs north-west and south-east. He put a grape on a plank, and looked to see if any one was in

the street, and, seeing no one, he held the muzzle of the gun about two and one-half feet from the grape, and the gun was pointed down, and fired. The distance west to the street from where the boy was when he shot is from 70 to 100 feet. Mr. Chaddock at the time the shot was fired was standing in the street, looking at this new house of the defendant. The shot glanced from the board, and struck him in the eye, destroying it. The street was a frequently traveled highway in the village of Benton Harbor, then containing about 3,700 inhabitants, and at a point where defendant had long resided. Defendant's boy Harry was nine years of age when the gun was purchased, and the Tabor boy was ten years old when the shot was fired. The gun was the common make of toy air-gun for children, breaking in the middle for the insertion of the shot, and, when closed again, operating with a spring, compressing the air and expelling the shot. The shot used were " BB," or " double B." Harry was told by his father not to lend the gun to other boys, as they might break it. The Tabor boy lived out in the country, and occasionally visited at defendant's. It does not appear that the defendant knew of the purchase of shot by his wife, or that his boy had used all the shot purchased for him by defendant.

The contention of the plaintiff is that the air-gun in question is a dangerous weapon, and that the defendant did not use sufficient care in the keeping of it upon his premises; that, at any rate, the question whether he did use such care or not should have been submitted to the jury. But, as the facts are, the defendant cannot be held responsible for the injury to plaintiff, unless it was negligence, sufficient to support this action, in buying the gun and allowing his son to use it. He cannot be considered negligent in any other respect. He cautioned his boy to be careful in its use, and no carelessness of

his own son was shown at any time in his use of it. The defendant and his son were neither of them responsible in any way, except owning the gun, for the use of it by the Tabor boy. It was kept inside the house, for the storm-door was an inclosure. If it came into the hands of Tabor through the negligence of any one, it was the negligence of the wife, for which the defendant is not liable.

This air-gun may be a dangerous weapon in a certain sense. The shot fired from it will not penetrate clothing, but it will put out the eye of a person, and will kill small birds and some small animals. These guns are in common and every-day use by children; over 400 of them were sold in one season by a dealer at Benton Harbor. But it is not more dangerous in the hands of children than a bow and arrow and many other toys. It would hardly be good sense to hold that this air-gun is so obviously and intrinsically dangerous that it is negligence to put it in the hands of a child nine years of age, and that such negligence would make the person so putting it in the hands of the child responsible for the act of another child, getting possession of it without defendant's consent or knowledge. Even if the gun had been left lying on the ground in the yard of the defendant, and the Tabor boy had picked it up outside the house, and used it, the defendant would not have been responsible for the damage done by the boy. An axe is considered a dangerous weapon, but if one leaves an axe by his wood-pile, and a child comes into the yard, picks it up, and injures another with it, is the owner of the axe liable for damage because he has not put this deadly weapon under lock and key?

And if it be granted that this air-gun loaded is a dangerous weapon, as is a gun loaded with powder and ball, would this fact make the defendant liable? I think

not. Suppose a person, owning a shotgun, should put the same unloaded within the storm-door of his house, and a neighbor's boy, 10 years of age, without the knowledge or consent of the owner, should pick up the gun, and obtain from the wife or some other member of the household a loaded cartridge, and take the gun out and discharge it, accidentally wounding some one, would the owner of the gun be responsible for the damage resulting to the injured person? To so hold him responsible would necessitate the keeping of unloaded fire-arms under lock and key, with the key in the possession at all times of the owner. This is not a case of leaving a torpedo or dynamite where it may be expected that children will find and play with it. An unloaded gun is harmless; a torpedo or dynamite is not, but is dangerous anywhere, and under all circumstances, to those not acquainted with the proper method of handling it, and liable to explode even in the hands of those who are expert in using it.

In my opinion, it was not negligence *per se* for the defendant to buy this toy gun, and place it in the hands of his boy nine years of age; and there were too many intervening causes without the act or knowledge of the defendant, between the buying of the gun and the injury, to hold the defendant liable for its use in this case. If his own son had, in any manner, contributed to the accident, a different question would arise, upon which I express no opinion.

The judgment must be affirmed, with costs.

The other Justices concurred.