72 N.J. Super. 168 (1962)
178 A.2d 44
GERARD LEVIS, AN INFANT BY HIS GUARDIAN AD LITEM, MARGARET LEVIS, AND MARGARET LEVIS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
GEORGE ZAPOLITZ, TRADING AS GALE SALES CO., AND LESTER STEIN AND ALLEN SETTEL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1961.
Decided February 6, 1962.
*169 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Leonard J. Felzenberg argued the cause for appellant (Messrs. Roskein, Kronisch, Felzenberg and Mandell, attorneys).
Mr. Michael Howard argued the cause for the respondent George Zapolitz.
Mr. Sidney D. Weiss argued the cause for the respondents Lester Stein and Allen Settel (Mr. William Osterweil, attorney).
*170 The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
This is an appeal from a dismissal of plaintiffs' complaint by the Law Division on the grounds, as stated in the order, of failure "to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact."
On June 21, 1958 plaintiff Gerard Levis, then 15 years of age, was struck in the right eye by part of a toy sling shot, an arm of which had broken off as he was using it. The sling shot had been purchased on the preceding day by his brother Joseph Levis, aged 12, from the defendants Stein and Settel, who operated a store at 75 Avon Avenue, Newark. The trauma resulted in permanent injury to the plaintiff's eyesight.
Suit alleging negligence was brought by the plaintiff's mother, as his guardian ad litem and individually, against Stein and Settel, the retailers, and also against George Zapolitz, the jobber or wholesaler from whom they had purchased the sling shot. The manufacturer was not joined.
Zapolitz had purchased a gross of the toy sling shots from a distributor for $7.20 and had sold one dozen to Stein and Settel for 72 cents. He delivered the order in the original packaging and conceded that he had made no inspection or test of the sling shots. Likewise, no inspection or test was made by or on behalf of either Stein or Settel (although the contrary had been originally asserted in the answers to interrogatories served by them).
The appendix tells us very little as to the nature or extent of the defect which brought about the break. The sling shot was a plastic toy. A rubber band attached to the arm was the propelling force. The purchase price was ten cents. One of the arms was claimed to have broken off due to a defect in manufacturing. At the oral argument it was conceded by plaintiff that the defect which allegedly brought about the break was internal and not one which could have been detected by visual inspection.
*171 Pursuant to leave granted in the pretrial order, defendants filed a joint motion to dismiss the complaint for failure to state a claim upon which relief can be granted. R.R. 4:12-2. At the conclusion of the hearing on the motion, the trial judge stated:
"It seems to me the only theory upon which the plaintiff can rely in this case is the failure to inspect; that the duty was on both of them to inspect; and that an inspection would have revealed this defect.
I am going to hold that there is no duty to inspect here and grant both your motions."
The plaintiffs treat the trial court's order as one for summary judgment under R.R. 4:58-3, and their brief seeks to point out various factual issues assertedly raised by the pleadings, pretrial order and interrogatories, which merited a jury trial. The order of the trial court leaves it uncertain whether the matter was being disposed of on the basis of insufficiency of the complaint alone, R.R. 4:12-2, or of the complaint and the other matters of record taken together, R.R. 4:58-3. This is of no consequence, however, as we view the case as presenting only an issue of law.
The complaint alleged that defendants, in selling the sling shot, were violating N.J.S. 2A:151-2, 10 and 12 (which prohibit the manufacture or sale of certain enumerated weapons including a "slung shot"). The court held to the contrary and this contention is not pressed on appeal. The other grounds of liability asserted were that the defendants were negligent "in selling a dangerous instrumentality to a minor * * *; and permitting a minor to obtain possession of a dangerous instrumentality when inexperienced in the handling of sling shots" and in "* * * failing to discover that the said sling shot was not properly manufactured * * *." Defendants deny that the sling shot was a dangerous instrumentality and deny any duty of inspection.
Initially, the plaintiffs urge that a plastic sling shot is not a proper article to be sold as a toy to a child. Since *172 it would be reasonable to assume that children are the basic users of toys of this type, plaintiffs' argument would, in effect, exclude them from the market altogether. We are unable to agree nor is the claim presently made that the accident occurred as the result of the youth or inexperience of the infant plaintiff. The same experience could have befallen an adult using the sling shot in the usual manner. The asserted proximate cause of this injury was the breaking of one of the arms of the sling shot as it was being used, due to an alleged defect which was not observable upon visual inspection, which caused a part to snap back and strike plaintiff's eye. The question presented is, therefore, whether there was a duty incumbent upon the defendants, or one or more of them, to inspect the sling shot for latent defects of this character.
It is urged that the sling shot was an inherently dangerous instrument and that this fact called for an inspection of the type stated. However, any danger "inherently" involved stems from the normal use of the article, not from its potential collapse in use. We have found no applicable decision which supports the contention that a plastic sling shot is inherently dangerous. We note, moreover, a number of well considered cases concerned with articles analagous to a sling shot which have held the contrary to be true. Miller v. Sears, Roebuck & Co. of Illinois, 250 Ill. App. 340 (App. Ct. 1928) (toy spark pistol); White v. Page (bow and arrow), 105 N.E.2d 652 (Ohio Ct. App. 1950); cf. Harris v. Cameron, 81 Wis. 239, 51 N.W. 437 (Sup. Ct. 1892) (BB gun); Chaddock v. Plummer, 88 Mich. 225, 50 N.W. 135, 14 L.R.A. 675 (Sup. Ct. 1891) (air gun); Crist v. Art Metal Works, 230 App. Div. 114, 243 N.Y.S. 496 (App. Div. 1930) (dissenting opinion), affirmed 255 N.Y. 624, 175 N.E. 341 (Ct. App. 1931) (toy spark pistol). In Herman v. Markham Air Rifle Co., 258 F. 475 (E.D. Mich. 1918), a suit against a manufacturer of air rifles, it was held that an air rifle was "an article inherently and imminently dangerous." That case is clearly distinguishable. *173 There the manufacturer had delivered for resale a loaded air rifle. Neither the wholesaler nor retailer knew of the hazard, and when the rifle was discharged by a customer in the retailer's store, the pellet struck the plaintiff, an employee. The court held that the loaded air rifle was inherently and imminently dangerous. In Mazzocchi v. Seay, 126 W. Va. 490, 29 S.E.2d 12 (Sup. Ct. 1944), an air rifle was held not to be inherently dangerous.
We cannot agree that the plastic sling shot here involved was an inherently dangerous article. As noted above, to be inherently dangerous the danger of injury must stem from the nature of the article itself and not from any defect therein. 74 A.L.R.2d 1111, 1146 (1960).
Plaintiffs rely upon Heckel v. Ford Motor Co., 101 N.J.L. 385 (E. & A. 1925), and MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (Ct. App. 1916), to sustain their contention that the trial court erroneously determined that the defendants were under no obligation to make an inspection of the sling shot in the present case. But in each of these cases the defendant was the manufacturer who had assembled the product for resale. The rule is well settled that the manufacturer of a product is under the duty of making an inspection for the purpose of locating latent or patent defects which could be ascertained by the exercise of reasonable care on its part. Sinatra v. National X-Ray Products, 26 N.J. 546, 553 (1958); Heckel v. Ford Motor Co., supra. The same obligation has been imposed upon an exclusive distributor which actually assembles, installs and services a product. Sinatra v. National X-Ray Products, supra, 26 N.J., at p. 553. The question to be determined, however, is whether the same obligation devolves upon the vendor of a toy where the alleged defect was latent and there is no allegation that the vendor knew or should have known of the defect.
The general rule followed in the majority of states is, excluding certain exceptions not here relevant, that a retailer, as distinguished from a manufacturer, is under no obligation *174 to test or examine articles manufactured by another for the purpose of discovering latent defects therein. Restatement, Torts (1948 Supp.), sec. 402 and text following; Prosser, Torts (2d ed. 1955), sec. 83, p. 492; 2 Harper & James, Torts (1956), sec. 28.29, p. 1597; 46 Am. Jur., Sales, sec. 805, p. 930. Plaintiffs contend, however, that in New Jersey it has been held that when dealing with an item which, if negligently made, could be dangerous when applied to its intended use in the usual and customary manner, a vendor is charged with the same duty as a manufacturer, citing O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953). There it was held that the defendant supplier of a hook was under the duty of exercising "reasonable care in placing it on the market." What was reasonable care was said to depend upon the facts of the case. "The test is whether on the facts of the particular case reasonable care would discover the latent defect * * * And in determining the amount of inspection necessary the dangerous propensities of the article are, of course, to be considered * * *." Id., p. 337.
In spite of its seemingly broad pronouncement as to the duty of a vendor to use reasonable care to discover latent defects, an analysis of the O'Donnell case and of other cases in which a vendor has been held negligent or in which a jury question as to negligence (as distinguished from warranty) was held to exist, discloses the fact that the failure to inspect items for hidden faults has not been held to lead to liability where the vendor was nothing more than a mere conduit between manufacturer and consumer. A vendor's status is thus distinguished from that of a manufacturer or of one standing in the place of the manufacturer, as in Slavin v. Francis H. Leggett & Co., 114 N.J.L. 421 (Sup. Ct. 1935), affirmed 117 N.J.L. 101 (E. & A. 1936).
In O'Donnell the defendant had taken upon itself the obligation of supplying to the East Orange Shade Tree Commission a hook for use in sustaining the weight of its employees in the performance of their duties. The hook *175 failed, with consequent injury to an employee. The manufacturer of the hook had not given any indication that it could so be used. On the contrary, the hooks were not suited for such a purpose, as the defendant would have discovered had it made inquiry. The court, in distinguishing the situation there presented from one wherein the vendor or supplier acted as a mere middleman, said, 13 N.J., at pp. 337 and 338:
"In the case at bar the defendant was not merely a vendor and supplier. It had without inquiry or proper investigation taken upon itself the sale of the hook in question for use in sustaining the weight of a man's body. It alone had decided that this particular hook was suitable for tree clearance work. Neither the manufacturer which assembled the hook nor the foundry which made the casting had given any indication that the hook could support the weight of a man's body, and in fact if inquiry had been made the defendant would have discovered that it was not suited for such a purpose. This is quite a different case from those wherein the vendor or supplier acts as the mere middleman, passing on the product of a reputable manufacturer. Cornelius v. B. Filippone & Co. Inc., 119 N.J.L. 540 (Sup. Ct. 1938). And it is a far cry from the case where the employer supplies his employee equipment manufactured by a reputable company to be put to the intended use, Stassett v. Taylor Iron and Steel Co., supra, 82 N.J.L. 631. It is also an entirely different case from those wherein the vendor is an assembler, or even a manufacturer, who utilizes parts manufactured by a third party, when the parts are intended for the purpose to which they are devoted by the vendor, Martin v. The Studebaker Corp., supra, 102 N.J.L. 612. In those cases the duty of reasonable inspection may not make the vendor or supplier liable for latent defects. Here, on the contrary, the defendant without proper investigation or testing applied an article manufactured for use with harness equipment to a use in connection with tree climbing equipment, where obviously human lives would depend upon its strength and durability.
Reasonable care requires that the article so chosen be constructed as to perform the task to which it is dedicated. Here there was evidence that the material used, malleable iron, was not satisfactory for this particular job, that it was not the proper metal to be used where a man's life would depend upon its effectiveness. In effect, the defendant had assumed the liability of a manufacturer when he sold the hooks for a use never intended by the manufacturer. He was therefore under a duty to ascertain that the article was made of proper raw materials and was so manufactured as to sustain the weight of a man's body." (Emphasis added)
*176 In Jaeger v. Elizabethtown Consolidated Gas Co., 124 N.J.L. 420 (Sup. Ct. 1940), a dealer in gas ranges for domestic use was held liable for personal injuries incurred when a range exploded in the plaintiff's home. However, the defendant corporation was more than a mere vendor. It had installed the range and had represented it to be of proper construction for safe domestic use when there was tangible evidence tending to prove the contrary. On three separate occasions, upon complaints of improper functioning, it had adjusted the range and had thereafter advised the plaintiffs that the range was safe.
In M. Dietz & Sons, Inc. v. Miller, 43 N.J. Super. 334 (App. Div. 1957), an auto dealer was held liable for failure to inspect a new power brake unit. Again it appeared that the dealer was more than a mere vendor, since it had actually installed the power brake system in the automobile. Moreover, it was open to the jury to find that the accident in question took place, not because of a defect in the unit, but because of improper installation.
Martin v. Bengue, Inc., 25 N.J. 359 (1957), was a suit against both the manufacturer and the sole United States distributor of a chest rub. The plaintiff in that case suffered injuries when vapors from the product ignited when he attempted to light a cigarette. The court found no occasion to deal with the extent of the tort liability of the distributor as distinguished from the liability of the manufacturer, since the distributor had independently arranged for its own chemical analysis of the product, and the joint brief filed on behalf of both defendants did not urge that the distributor's responsibility was any less than the manufacturer's. The implication here is that if the issue had been raised and if the defendant had done nothing more than distribute the product, a failure to make an analysis would not have been actionable.
In Araujo v. N.J. Natural Gas Co., 62 N.J. Super. 88 (App. Div. 1960), the supplier of the allegedly defective *177 gas pipe was also the installer. Moreover, the defect in the pipe was patent, not latent as in the case sub judice.
In Mazzietelle v. Belleville Nutley Buick Co., 46 N.J. Super. 410 (App. Div. 1957), a dealer was held liable for a fire which damaged plaintiff's automobile. There, however, the dealer was under an obligation to service the vehicle. Plaintiff had complained to the defendant about defective electrical equipment and also about a burning odor. The car had been brought back to the dealer about 15 or 20 times for correction of defects. Just four days prior to the fire the plaintiff had again complained and was told to bring the car in the following week.
Cases dealing with vendors of new cars, such as Mazzietelle, supra, can be readily distinguished from the case sub judice since such dealers generally undertake the duty of inspection before final delivery and service thereafter. Such was the case in Pabon v. Hackensack Auto Sales, Inc., 63 N.J. Super. 476 (App. Div. 1960), at p. 497, cited by plaintiffs, where defendant was held to have been under a duty to replace parts, make repairs and inspect the automobile involved for defects.
From our examination of the cited cases we conclude that in the particular circumstances of the case before us no liability existed on the part of the vendors for failure to make an inspection for latent defects. Since the alleged defect was within the substance of the article purchased, to take it apart to determine the quality of its structure would be to destroy it. Cf. Lipari v. National Grocery Co., 120 N.J.L. 97 (Sup. Ct. 1938). Were defendants required, then, to take each of these ten cent items and pull back the elastic band to test the strength of the arms? If so, what if no weakness appeared on the first pull? (We are not told in the present case how many times the sling shot was used before it broke.) Would they then be required to pull the elastic band five, ten, or a hundred times before their obligation was satisfied? To require these vendors to go to such an extreme to discover a latent defect in a toy sling *178 shot would impose a burden upon them which would be totally unrealistic and out of proportion to the risk involved, and inconsistent with the facts of everyday business life. We do not hold that there can never arise a duty on the part of a vendor who is a mere middleman to inspect items for latent defects. But in the factual context of the present case, it did not extend beyond the making of an inspection for patent defects. Since the defect was internal and thus not visible, such an inspection would have revealed nothing. Thus no damage can be said to have proximately resulted from the conceded failure to make any inspection. Cf. Ludwig v. Kirby, 13 N.J. Super. 116 (App. Div. 1951); cf. Kelly v. Loft, Inc., 124 N.J.L. 185 (E. & A. 1940).
The above rationale applies in particular to the jobber Zapolitz, who acted as a mere conduit in passing on the products to the retailer in their original packages. He handled many more items than did the retailer and had no means of knowing who the ultimate purchasers would be.
Plaintiffs also urge that Stein and Settel should have warned the purchaser of the "dangers" of the sling shot. It is to be noted that the injured plaintiff was not the purchaser. However, the only "danger" concerning which defendants were in a position to warn the purchaser was the ability of the sling shot to project missiles. But this quality was not the proximate cause of the injury. Moreover, this "danger" was or should have been as apparent to the buyer as to the vendor. It would be difficult indeed to conceive of a 12-year-old boy who was unacquainted with the use of so common an article! Under such a circumstance there would ordinarily be no duty to provide a warning. 46 Am. Jur., Sales, sec. 804, p. 929.
Finally, the plaintiffs contend that they should have been allowed to introduce expert testimony to prove that the design, specification of material, and fabrication of the sling shot were defective. These issues might have been pertinent in an action against the manufacturer, but they had no relevancy in an action against a vendor or supplier *179 in circumstances where a duty of inspection is not reasonably to be imposed. Cf. Restatement, Torts (1948 Supp.), sec. 402, comment (b).
Accordingly, we hold, upon the admitted facts, that the trial court correctly determined that the plaintiffs had failed to state a claim against the defendants upon which relief could be granted.
Affirmed.