WHALEN *v.* BENNETT.

OPINION OF THE COURT.

1. STATUTES—VIOLATION—PERSONAL INJURY—AIR GUNS.
   The criminal statute pertaining to the use of spring, air, or gas operated handguns, *held,* not to create civil liability on the part of a parent for permitting his child to use such a gun in violation of the statute (CLS 1961, §§ 752.891, 752.892).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 39 Am Jur, Parent and Child § 56.
[3] 41 Am Jur, Pleading § 77.
[4] 41 Am Jur, Pleading § 342.
[5, 7] 53 Am Jur, Trial § 190.
[6] 20 Am Jur, Evidence § 157 *et seq.*

2. Negligence—Dangerous Instrumentality—Air Gun.

An air gun is not a dangerous instrumentality and placing it in the hands of a minor child is not negligence *per se*.

3. Same—BB Gun—Liability of Parent for Act of Child—Statement of Claim on Which Relief Can Be Granted.

Cause of action was stated by plaintiff who alleged negligence in parent in giving BB gun to minor child, and permitting child to use gun unsupervised by an adult, when gun discharged while in the hands of a playmate of the child and injured the eye of another playmate (GCR 1963, 117.2).

4. Judgment—Summary Judgment—Pleading—Affidavits.

Summary judgment, *held*, improperly granted in case where plaintiff's pleadings stated a cause of action in negligence and defendant's affidavits were not sufficient to show that defendant exercised such precautions as to make injury unforeseeable (GCR 1963, 117.2).

Separate Opinion.

J. H. Gillis, J.

5. Negligence—Air Gun—Dangerous Instrumentality—Question for Jury.

*Whether air gun utilized by defendant's son without adult supervision was a dangerous instrumentality* held, *a matter for jury consideration in action by parent of a boy who was injured while gun was being used by a playmate.*

6. Same—Dangerous Instrumentality—BB Gun.

*The Court cannot assume that BB guns used by defendant's children in case at bar were of same kind as one held not to be a dangerous instrumentality in another case decided 75 years ago.*

7. Same — Dangerous Instrumentality — BB Gun — Population Density.

*Density of population in the area is a factor to be considered in determining whether liability should be imposed upon a parent for the use of a BB gun as a dangerous instrumentality when he permits his minor child the unsupervised use of such gun.*

Appeal from Berrien; Hadsell (Philip A.), J. Submitted Division 3 May 11, 1966, at Grand Rapids. (Docket No. 1,018.) Decided July 26, 1966.

Complaint by Donald Whalen, guardian of the estate of Brian Whalen, a minor, and Donald Whalen in his own behalf against Donald Bennett, for injuries sustained by Brian Whalen when an air gun owned by one of Bennett's sons was discharged. Summary judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*George S. Keller,* for plaintiff.

*Troff, Lilly, Bonow, Piatt & File (John D. Doyle,* of counsel), for defendant.

FITZGERALD, J. The defendant in this case was the father of two sons aged 8 and 9 years at the time of the accident involved. He had purchased and given to them at Christmas, 1960, two air guns, commonly known as BB guns, designed to propel BB shot. In the months following Christmas, defendant instructed the boys in the use and handling of the guns, allowing them to use them under supervision. As they became more proficient in their use, they were allowed to take the guns off the parental premises with consent, and on some occasions without adult supervision.

On November 4, 1961, the boys took the BB guns from an unlocked rack in the breezeway of their home, and without parental permission left the premises in the company of plaintiff's 9-year-old son, Brian, and a fourth boy about the same age. They took the guns to a nearby field, and following some juvenile horseplay, one of the guns, then in the hands of the fourth boy, Chris Davies, was discharged, the BB striking Brian Whalen in the right eye, inflicting severe damage to his sight.

Plaintiff began action on behalf of himself and his minor son against Donald Bennett, the father

of the two boys who owned the gun, and his amended complaint sought damages on the theory that PA 1959, No 186 (CLS 1961, §§ 752.891, 752.892, Stat Ann 1962 Rev §§ 28.436[41], 28.436[42]), created a statutory duty on the part of a parent not to permit the use of a BB gun away from his domicile without adult supervision, and on the additional theory of negligent entrustment to the boys of a dangerous instrumentality.

A motion for summary judgment asserting that the statutes were inapplicable, that as a matter of law BB guns were not dangerous instrumentalities, and that there was an absence of proximate cause, was granted by the trial court and claim of appeal from that order filed with this Court.

On appeal, the questions asked are whether BB guns are dangerous instrumentalities of such a nature that a father, allowing a minor access to one without adult supervision, may be charged with negligence, making him liable for injuries by another; and, further, whether the statute cited, *supra,* imposes any liability on him. The main question on appeal, however, appears to be whether defendant was guilty of actionable negligence on the state of affairs as they transpired here, and whether a cause of action has been stated by plaintiff.

The first question, that of whether a BB gun is a dangerous instrumentality, was settled some years ago in the case of *Chaddock* v. *Plummer* (1891), 88 Mich 225 (14 LRA 675, 26 Am St Rep 283), which held specifically that an air gun was not a dangerous instrumentality. The trial court places great reliance on this case and in its opinion quotes the following portion of that decision and comments thereon:

" 'This air gun may be a dangerous weapon in a certain sense. The shot fired from it will * * *

put out the eye of a person, and will kill small birds and some small animals. These guns are in common and every day use by children; over 400 of them were sold in one season by a dealer at Benton Harbor [in 1890 a village of 3,700 inhabitants]. But it is not more dangerous in the hands of children than a bow and arrow and many other toys. It would hardly be good sense to hold that this air gun is so obviously and intrinsically dangerous that it is negligence to put it in the hands of a child nine years of age.'

"This seems to decide the issue as far as the instant case is concerned, as that case has not been modified or reversed to this date. If that decision is to be overruled, it must be done by a higher court."

It seems to us, however, that a manifest over-reliance has been placed on the *Chaddock Case* and holdings ascribed to it that are not to be found therein. Indeed, it seems that the *Chaddock Case* can be readily distinguished from the case at bar.

In *Chaddock,* defendant had purchased an air gun for his 9-year-old son. While the boy was at school and the defendant was away from home, a neighbor boy came by, and discovering the gun, asked defendant's wife for BB shot, which she gave to him, along with the instruction that he shoot at a hen coop on the premises. Plaintiff's eye was put out by a ricocheting shot. The court held that a BB gun was not a dangerous instrumentality, concluding its opinion with the following language:

"In my opinion, it was not negligence *per se* for the defendant to buy this toy gun, and place it in the hands of his boy nine years of age; and there were too many intervening causes without the act or knowledge of the defendant, between the buying of the gun and the injury, to hold the defendant liable for its use in this case. *If his own son had, in any manner, contributed to the accident, a dif-*

*ferent question would arise, upon which I express no opinion."* (Emphasis supplied.)

Here, then, is the difference between *Chaddock* and the case at bar. In *Chaddock,* neither the defendant nor his minor son had any direct connection with the incident resulting in the injury to the plaintiff. Whatever might be said of the role of defendant's wife in *Chaddock,* she was not a party to the action. As so carefully stated by Justice MORSE, the result reached in *Chaddock* rests on this factor, with an express disclaimer as to what the result would have been had there been some showing that the son had contributed to the accident.

The connection and contribution of defendant's sons to the injury in the instant case results in the presentation of the question explicitly avoided by the *Chaddock* court. This being true, the *Chaddock Case* presents no bar to consideration of the facts in the instant matter. In short, *Chaddock* does not control.

The statute in issue reads as follows:

"An act to regulate the use of certain spring, gas, or air operated handguns and to provide a penalty for violation of this act.

*"The People of the State of Michigan enact:*

"Sec. 1. No person under 21 years of age shall use or possess any handgun designed and manufactured exclusively for propelling BB's not exceeding .177 calibre by means of spring, gas or air, outside the curtilage of his domicile unless he is accompanied by a person over 21 years of age.

"Sec. 2. Any person who violates the provisions of this act is guilty of a misdemeanor."

It is difficult to agree with appellants' contention that this statute creates civil liability on the part of a parent. It is directed toward the offending minor himself, and while the title of the act may be

sufficiently broad to infer that the legislature intended a degree of regulation of guns such as those before us, the hard fact remains that the statute is not couched in such terms as to create civil liability on the part of parents of the offender. We have little doubt but that the thrust of the statute was to protect persons and property, but the sanctions imposed are criminal and not civil, and do not present a situation for application of the negligence *per se* rule.

Regarding the matter of whether negligence can be ascribed to a parent who purchases and allows access to a BB gun by his minor son, and whether injury to a third person is foreseeable from that BB gun, we can only say that the record is not so "open and shut" as the granting of defendant's motion for summary judgment would make it appear. Defendant contends that there was no foreseeability, placing heavy reliance on the point that the guns were to be used only with parental permission and that this admonition was frequently repeated.

The deposition of defendant belies this contention:

"*Q.* Now, did you personally ever tell them that they could take the guns off the premises without you? We're not talking about your wife, but you.
"*A.* I'm not sure.
"*Q.* You don't even know whether you ever gave them permission, either way?
"*A.* No."

Defendant further cites the recent decision of this Court in *Muma* v. *Brown* (1965), 1 Mich App 373, which held that as a matter of law there was no foreseeability that a minor child would steal his parents' automobile keys from a cupboard where they had been secreted in a cup and drive the par-

ents' auto, injuring plaintiff. That case, like *Chaddock,* can be distinguished, in that the parents there had taken prudent and practical measures to prevent access to the automobile on the part of their minor son.

A review of the pleadings and depositions in the instant case persuades us that a jury-submissible issue of fact is raised, and that the defendant's motion for summary judgment* should not have been granted. Sufficient allegations of a cause of action for negligence are found therein and assertions of a lack of foreseeability do not strike us as of such import that plaintiffs should be denied a right to have the case submitted.

Reversed and remanded. Costs to appellants.

HOLBROOK, P. J., concurred with FITZGERALD, J.

J. H. GILLIS, J. *(concurring).* I concur in the results arrived at in the majority opinion because I am convinced that there is a factual issue in the instant case which should be presented to a jury. The trial court in granting the motion for summary judgment relied on *Chaddock* v. *Plummer* (1891), 88 Mich 225 (14 LRA 675, 26 Am St Rep 283). In the court's opinion in response to the argument of the plaintiffs' counsel, it was stated that:

"The air gun has not changed in any manner from that in 1891. If it wasn't a dangerous instrument then, it is not any more so now. There are probably more air guns and more children, but the gun remains the same as it was then."

In the *Chaddock Case,* the Court described the air gun as follows (p 228):

"The gun was the common make of toy air gun for children, breaking in the middle for the insertion

---

* See GCR 1963, 117.—REPORTER.

of the shot, and, when closed again, operating with a spring, compressing the air and expelling the shot."

In the instant case we do not have an accurate description of the type of weapon involved. The pleadings refer to a "BB hand gun."

"Now, the number of makes and types of hand-operated air arms runs high in the thousands. They include toy patterns, low-powered types for short-range target shooting and indoor use, types powerful enough for use against small birds, rodents, and vermin, ultra-precision types rivalling the accuracy of the best cartridge weapons at short distances, and finally, types powerful enough for deer and boar hunting." W. H. B. Smith (1957), Gas, Air, & Spring Guns of the World, p 17.

"The term 'air-guns' is loosely used (as in the title of this book) to mean any and every long arm in which the bullets or missiles are projected by compressed air. Properly applied, however, the term air-gun means a gun *with a smooth, non-rifled barrel* in which the propellant is compressed air." L. Wesley (1955), Air-Guns and Air-Pistols, p 2.

A jury should have the opportunity to ascertain the particular type of air guns utilized by the defendant's son. We cannot assume that these guns were the same as those described by the court in the *Chaddock Case* some 75 years ago. Density of population of the area where the guns were utilized would be another factor to be considered by a jury.

Reversed and remanded for trial. Costs to appellants.