JOHN E. WILLIAMS *v.* JAMES E. DAVIDSON, ETC.

5-4033                                    409 S.W. 2d 311

Opinion delivered December 19, 1966

*Wright, Lindsey & Jennings,* for appellant.

*Johnston & Martin,* for appellees.

GEORGE ROSE SMITH, Justice. This is an action

brought by the appellee, individually and as next friend, to recover damages for injuries sustained when his ten-year-old son Bobby was struck in the eye by a pellet fired from a BB gun. The plaintiff's theory is that the defendant, John E. Williams, was negligent in failing to supervise and control his own ten-year-old son David, who owned the gun, and his eleven-year-old daughter Libby, who was holding the weapon when the accident happened. The jury returned verdicts for the plaintiff totaling $12,500. The appellant's only contention here is that he was entitled to a directed verdict.

There is hardly any dispute about the facts. Williams owned a 32-unit motel, where his family had living quarters. David, since the time he was eight, had owned three or four BB guns. About two months before the incident now in question there had been a complaint by a motel guest about David's handling of such a gun. According to this guest, David and another boy were bouncing BB's off ice that had formed on the motel swimming pool. One pellet hit the guest; others hit windows, breaking one of them. Upon receiving that complaint Williams instructed his son to put the gun away and not to take it out on the motel premises. Thereafter the gun and the BB's were kept in a clothes closet. There is no evidence that David had disobeyed his father's instructions before the night when Bobby was hurt.

On that night the Davidsons were visiting the Williamses at the motel. (Mrs. Davidson and Mrs. Williams are sisters.) The accident happened at about ten o'clock. Earlier that evening the two boys had tried to take the gun out, but Mrs. Williams saw them with the weapon and made them put it back. Later on, however, they succeeded in getting the gun and taking it outside, where all three children took turns in target practice. At the moment of the accident Bobby, thinking it to be his turn, was reaching for the gun. Libby, who was holding it, pulled it back to keep Bobby from getting it. The gun went off accidentally and struck Bobby in the right

eye, causing a permanent partial loss of vision. The court's instructions, which are not questioned, included AMI 606, explaining a parent's duty to exercise reasonable means to control his child. *Bieker* v. *Owens*, 234 Ark. 97, 350 S.W. 2d 522 (1961).

There is, of course, no contention that Williams is liable for the conduct of his children merely because he is their father. Instead, the appellee insists that Williams was himself at fault in keeping both the gun and the ammunition in a place readily accessible to the children, after having notice of David's earlier carelessness. Counsel invoke the principle, announced by many authorities, that a person may be held responsible for harm resulting from his negligence in allowing a young or inexperienced child to get possession of a firearm such as a shotgun or .22 rifle.

Counsel for the appellant, though conceding the force of that principle of law, insist that a BB gun or an air rifle is merely a toy comparable to a pocket-knife, a bow and arrow set, or a baseball bat, all of which may be used in such a way as to inflict serious injuries. Specifically, four cases are cited in support of the appellant's position. We have examined those cases, and many others, but they do not convince us that the appellant was entitled to a directed verdict.

The first case relied upon by the appellant is an 1891 decision, *Chaddock* v. *Plummer,* 88 Mich. 225, 50 N.W. 135, 14 L.R.A. 675, 26 Am. St. Rep. 283. On its facts that case has no resemblance to this one. There the defendant had given an air-gun to his son, but neither had anything to do with the injury to the plaintiff. The defendant's wife, who was not a party to the case, let another child, who seems to have come to the house to deliver vegetables, borrow the gun. It was this second child who fired the shot that injured the plaintiff.

The *Chaddock* decision, handed down seventy-five years ago, was effectively circumscribed by a 1966 Michi-

gan decision, *Whalen* v. *Bennett,* 4 Mich. App. 81, 143 N.W. 2d 797. There, much as in the case at bar, the defendant's eight-and nine-year-old sons had taken BB guns from an unlocked rack without parental permission. While they were playing with two other boys of about their age the gun was discharged while in the hands of the third boy, and the fourth was hurt. The trial court, relying upon the *Chaddock* case, entered a summary judgment for the defendant, but the Court of Appeals (an intermediate court) reversed that judgment, distinguishing the *Chaddock* opinion and holding that there was an issue of fact for the jury. The *Whalen* case is perhaps more similar to the present case than any other one we have found.

The appellant next cites *Harris* v. *Cameron,* 81 Wis. 239, 51 N. W. 437, decided in 1892. There the court described an air-gun as a toy, likening it, as we have already indicated, to a pocketknife, a bow and arrow set, and a baseball bat. We disagree with that reasoning. Those other toys are capable of inflicting serious injury when they are *intentionally* used for that purpose. It goes without saying that whenever children play together it is a practical impossibility for their parents to deny them access to objects that may be used to inflict intentional harm. The significant difference here is that an air rifle may cause serious accidental injury as well as serious intentional injury. It is more comparable to a firearm than to a harmless toy.

Moreover, the *Harris* case, like the *Chaddock* case in Michigan, cannot be regarded as the law today. In *Gerlat* v. *Christianson,* 13 Wis. 2d 31, 108 N. W. 2d 194 (1961), in a case not materially different from that now before us, the court upheld a verdict for the plaintiff, holding that it was for the jury to say whether the defendant father was negligent in allowing his son to have access to an air rifle. In distinguishing the *Harris* case the court said: ''The only question involved in that case was whether the purchase and presentation of an air gun by the father to his son constituted negligence.''

The court also observed that the classification of an air gun as a toy had been changed by statute.

The third case relied upon is *Capps* v. *Carpenter,* 129 Kan. 462, 283 Pac. 655 (1930). There the court did say that a BB gun is not a dangerous agency, but that statement was qualified by this language later in the opinion: "When a chattel is itself a dangerous thing, probable harm from its use is foreseeable, and precaution must be taken accordingly. When probability of harm depends upon the immaturity, incompetence, inexperience, recklessness, or ferociousness of the person to whom a chattel is given for use, quite a different issue is presented. The person receiving the chattel is the dangerous agncy." Upon that basis the court concluded that there was a jury question as to the defendant's liability for having allowed his eight-year-old son to have a BB gun, upon proof that the child was cruel and savage toward other children. It will be seen from the paragraph we have quoted that the court would have taken the same position if, as here, the child had been reckless.

Fourth, counsel cite *Lane* v. *Chatham,* 251 N. C. 400, III S. E. 2d 598 (1959), but again the only comfort afforded to the appellant is the court's statement that an air rifle is not a dangerous instrumentality *per se.* The court in fact sustained a verdict against the child's mother on the ground that she, "after learning of Raymond's misuse of his air rifle, breached her legal duty by failing to exercise reasonable care to prohibit, restrict or supervise Raymond's further use thereof." Furthermore, there is much practical sense in these sentences from Justice Higgins's concurring opinion: "I concur in the opinion. However, court decisions that air rifles are not *per se* dangerous weapons are as out of date as the horse and buggy. Marvelous advances have been made both in the precision and power of pneumatic arms. Sporting magazines on practically every newstand carry stories and advertisements of air rifles capable of driving a lead slug through a three-quarter-

inch pine board. It is time for the courts to find out what the public, or at least those interested in such matters, has known for some time—that a well manufactured air rifle is now not only a dangerous, but a deadly weapon.''

We do not mean that the appellant's contention is without support in the cases. There are undoubtedly a few courts that would approve a directed verdict in a case such as this one. See, for instance, *Norlin* v. *Connolly,* 336 Mass. 553, 146 N. E. 2d 663 (1957). But we think the better-reasoned cases, and especially the more recent ones, support the view that the proof in the case at hand raised a question of fact for the jury. In at least two cases an air rifle has been found to be a dangerous instrumentality. *Phillips* v. *D'Amico,* 21 So. 2d 748 (La. App., 1945) ; *Archibald* v. *Jewell,* 70 Pa. Super. 247 (1918). We do not feel called upon to say that no jury should be permitted to reach that conclusion.

In the present case the appellant, with knowledge that his son had misused a BB gun in the past, left the weapon and the ammunition in an unlocked closet. His conduct may be contrasted with that of the father in *Tatum* v. *Lance,* 238 Miss. 156, 117 So. 2d 795 (1960), who won a directed verdict upon proof that he had hidden the BB's for his son's gun under some clothes in an upstairs dresser drawer, where the child found them only by searching the house in his parents' absence. We conclude that the trial court was right in letting the case go to the jury.

Affirmed.