## GATES *v.* PLUMMER.

### Opinion delivered March 7, 1927.

1. HIGHWAYS—INJURY TO PEDESTRIAN—JURY QUESTIONS.—In an action for injury to an eleven-year-old boy struck by defendant's automobile while crossing the road, evidence *held* to take the questions of negligence and contributory negligence to the jury.

2. HIGHWAYS—CONTRIBUTORY NELIGENCE OF INFANT.—In determining the contributory negligence of a boy, eleven years old, who was struck by an automobile while crossing the road, he can be

held to exercise the care and prudence of a boy of that age, and cannot be expected to exercise the same care as an adult should exercise under the same circumstances.

3. TRIAL—INSTRUCTION—CONSTRUCTION AS A WHOLE.—In an action for injury to an eleven-year-old boy struck by defendant's automobile as he crossed the road, an instruction to find for the plaintiff if he was injured while exercising ordinary care for his own safety, by reason of defendant's negligence, was not erroneous in not requiring the verdict to be based on the testimony, in view of the charge as a whole, and the fact that the jury were sworn to render a verdict according to the law and evidence.

4. DAMAGES—PERSONAL INJURIES—WHEN NOT EXCESSIVE.—Where a boy sustained a compound fracture of the leg and a nervous shock followed by pneumonia, as a result of which he ceased to be normal, a verdict for $3,000 damages was not excessive.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann*, Judge; affirmed.

*T. D. Wynne*, for appellant.

*Sam T. & Tom Poe*, for appellee.

SMITH, J. This suit was brought to recover damages to compensate an injury sustained by Dale Plummer, a boy eleven years old, as the result of being struck by an automobile driven by appellant Gates, the defendant below. The injury occurred on the Galloway Pike, east of Little Rock, about ten o'clock on the morning of February 10, 1925. It was a cold day, and a strong wind was blowing. The road where the boy was struck runs east and west, and was perfectly straight for a mile. Appellee's father and some other men were at work on a house on the north side of the road. On the south side of the road, opposite the house, two automobiles were parked in close proximity to each other. The boy had been sent from the house where the men were at work to get an oil-can out of one of the cars. He got the can, and was standing on the running-board of the automobile when appellant approached in his car. Appellant admitted that he was driving thirty miles an hour, but the jury may have found that he was driving much faster, as one of the men working at the house testified that his attention was attracted to the car by its high speed.

Appellant admitted seeing the boy on the running-board of the car, but he testified that he thought the boy was in a safe place, and he did not reduce his speed. He did blow his horn twice—the first time when he was about 150 yards from the parked cars and the second time when about half that distance. The boy testified that, when he got the oil-can for which he had been sent, he started walking across the road. He did not think any cars were coming. He took a "peep" in each direction as he started across the road, and did not see the approaching car. The boy had crossed the center line of the highway and was on the north side of the road when he was struck, and the testimony shows there was space enough between the parked cars and the boy for appellant to have passed between the cars and the boy had his car been under control. Appellant testified that he turned to the left in an attempt to pass in front of the boy, and thus avoid striking him. Appellant admitted that he did not reduce his speed after seeing the boy, but he testified that he did not have time to do so after discovering the boy's peril.

The testimony shows that the car dragged the boy about 75 or 80 feet after striking him before he was untangled from it, and the car ran twice that distance after striking the boy before it stopped. Appellant explained that fact by saying that he was so surprised and disconcerted by striking the boy that he did not immediately apply his brakes.

An automobile mechanic, who qualified as an expert, testified that appellant's car, running 30 miles an hour, could have been stopped within 60 or 65 feet; that, at 25 miles per hour, it could have been stopped within from 51 to 53 feet; at 35 miles per hour, within from 115 to 120 feet, and at 40 miles per hour it would probably require 200 feet to stop the car.

It is first insisted that the court erred in submitting the case to the jury, for the reason that the undisputed testimony shows either that the injury resulted from an

unavoidable accident or would not have happened but for the boy's contributory negligence.

While the case is a close one, we have concluded that, with the inferences reasonably deducible from the testimony, the case was properly one for the jury both on the question of the negligence of appellant and the contributory negligence of the boy. The jury no doubt found that appellant was negligent in running his car at a higher speed than an ordinarily careful and prudent man would have done under the circumstances stated. We are also of the opinion that the court did not err in refusing to declare, as a matter of law, that the boy was guilty of contributory negligence, and that this question was properly submitted to the jury.

An exception was saved to the instruction which submitted the question of contributory negligence to the jury, as well as to the other instructions given in the case. This instruction appears to have been drawn to conform to the law as declared by this court in the case of *St. L. I. M. & So. Ry. Co.* v. *Sparks,* 81 Ark. 187, 99 S. W. 73. In that case a boy ten years old was injured by being struck by a moving railroad car while walking across the railroad track, and it was insisted that the trial court should have told the jury as a matter of law that the child was guilty of contributory negligence The trial court had submitted that question to the jury, and it was held that this was not error. In so holding Mr. Justice RIDDICK said that "a child is not required to exercise the same capacity for self-preservation and the same prudence that an adult should exercise under like circumstances." He further said: "You can reasonably expect of a boy between nine and ten years of age only that degree of care and prudence that a boy of that age or of his degree of intelligence should exercise. What would be ordinary care for such a boy might be culpable negligence in an adult." The doctrine of that case has been several times since reaffirmed. *Garrison* v. *St. L. I. M. & So. Ry. Co.,* 92 Ark. 437, 123 S. W. 657; *St. L. S.*

*W. Ry. Co.* v. *Adams,* 98 Ark. 222, 135 S. W. 214; *Nashville Lumber Co.* v. *Busbee,* 100 Ark. 76, 139 S. W. 301, 38 L. R. A. N. S. 754; *Kansas City Sou. Ry. Co.* v. *Teater,* 124 Ark. 1, 186 S. W. 204.

The court gave, over appellant's objection, an instruction numbered 1, which reads as follows:

"If you find in this case that the defendant was negligent as alleged in the complaint, and by reason thereof plaintiff, while in the exercise of ordinary case for his own safety, was injured, then you will find for the plaintiff."

It is argued that this instruction did not require the jury to base the verdict upon the testimony offered at the trial. This objection is answered by the case of *St. L. I. M. & So. Ry. Co.* v. *Hydrick,* 109 Ark. 231, 160 S. W. 196, in which case a similar instruction had been given. It was there said:

"While it is always better form, and the better practice, for the court to tell the jury that its findings on every issue of fact in the case must be based upon the evidence, yet, where it is plain from the charge of the court, taken as a whole, that the jury were told that their findings must be based upon the evidence, the jury could not be misled nor feel authorized to make a finding that was not based upon the evidence because some separate or particular instruction omitted this precaution. The jury were sworn, in the first instance, to try the case and a true verdict render according to the law and the evidence. That being true, it is not likely that any man of sufficient intelligence to be a competent juror would feel authorized to wander beyond the evidence to find matters upon which to predicate his findings in the case. The conscientious juror would necessarily feel restrained by his oath to base his findings upon the evidence."

Objections were saved to certain other instructions because they did not require the jury to find that appellant's negligence was the proximate cause of the injury before returning a verdict against appellant. The instructions might well have been modified as requested, but

no prejudicial error was committed in refusing to do so under the facts of this case, for the reason that it is an undisputed fact that the boy was injured by being struck by appellant's car, and there was therefore no question as to the proximate cause of the injury. There was a question whether appellant was guilty of negligence, and also whether the boy was guilty of contributory negligence, but these questions were submitted to the jury under instructions which have been frequently approved by this court, and, for this reason, no useful purpose would be served in again discussing them. In this connection it may be said that the court gave all the instructions requested by appellant—six in number—except the first instruction requested by him, this being a peremptory instruction to find for the defendant. The instructions given at appellant's request fully presented his theory of the case.

It is finally insisted that the verdict, which was for $3,000, was excessive. On this subject the testimony was as follows: The boy was unconscious for more than half an hour after he was struck. He sustained a Potts or compound fracture of the right leg. Both bones of the right leg were broken just above the ankle, and the jagged edges of one of the bones protruded through the muscle, flesh and skin of the right leg. The boy was confined in the hospital for a period of six weeks, and wore a cast on his right leg for three weeks after leaving the hospital, and was required to use crutches for two weeks after the cast was removed. It is true the attending physician testified that the union of the bones was perfect and that the leg would be as strong as ever. But Dr. C. C. Kirk, who qualified as a nerve specialist, testified that the boy sustained a profound nervous shock, and had a raging fever, followed by pneumonia, as attending complications. Dr. Kirk further testified that the boy had ceased to be a normal child, as he had suffered a psychic shock which had changed his character, and that it was speculative as to how long that condition would

continue. Under the circumstances we are unable to say that the verdict is excessive.

Finding no prejudicial error, the judgment is affirmed.