167 So.2d 448 (1964)
Robert FABRE, Sr.,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY.
No. 6202.
Court of Appeal of Louisiana, First Circuit.
July 1, 1964.
Rehearing Denied September 30, 1964.
Writ Refused December 1, 1964.
*449 Durrett, Hardin, Hunter, Dameron & Fritchie, by Calvin E. Hardin, Jr., Baton Rouge, for appellant.
C. Alvin Tyler, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LOTTINGER, Judge.
This is a suit by Robert Fabre, Sr., individually and administrator of the estate of his minor son, Robert Fabre, Jr. against Lumbermens Mutual Casualty Company as the insurer of Wilson J. Thibodeaux and members of his family under a policy of comprehensive personal liability insurance, for accidental injuries to petitioner's said minor son. The limit of the policy is Ten Thousand ($10,000.00) Dollars to any one person suffering personal injury and a limit of Two Hundred Fifty ($250.00) Dollars medical pay. The defendant insurance company has admitted liability under its medical payment clause, and has offered to make payment thereof, however it denies liability in tort. The Lower Court awarded judgment in favor of petitioner in the amount of Six Hundred Ninety-six and 95/100 ($696.95) Dollars with interest on Two Hundred Fifty ($250.00) Dollars of that amount only from September 26, 1963, and gave judgment for petitioner for the use and benefit of his minor son in the sum of Nine Thousand Ninety-four and 05/100 ($9,094.05) Dollars. The defendant has taken a suspensive appeal.
There is substantially no dispute between the parties with regard to the facts of this case. On August 23, 1962, at about ten o'clock or eleven o'clock a. m., Mrs. Erna Thibodeaux, wife of the insured, picked up her four year old grandson, Robert Fabre, Jr., at the Fabre home and took him to her home to play for a while. Also present at the Thibodeaux home were Mrs. Thibodeaux's sons, Gary, age nine, and Ronnie, age six.
The children played together for a while and at about noon Mrs. Thibodeaux served them lunch. Some time after that Mrs. Thibodeaux went into the living room to watch a television program called "Charge Account". While she was watching television, the children were playing cowboys on the back porch, which is separated from the living room by the kitchen. At about one o'clock p. m. petitioner's son, Robert Fabre, Jr., came into the living room where the grandmother was watching television, with blood streaming from his eye. Upon interrogating the children, Mrs. Thibodeaux learned that her own child, Ronnie, age six, had struck young Robert in the right eye with a portion of a toy cap pistol which has what was described as a raised knife blade sight and a jagged upright hammer. There is some dispute as to the time which elapsed prior to getting medical attention for the injured child. The record discloses that Mrs. Thibodeaux bathed young Robert, to wash the blood off him *450 and then picked up his mother prior to going to the doctor for medical attention. We do not believe this time element to be very important, however, as the doctor testified that even immediate medical attention could not have saved the right eyeball of young Robert.
The evidence discloses that the children had been playing cowboys on the back porch of the Thibodeaux home. Young Robert was lying on the floor playing "dead" behind Ronnie. Ronnie had the toy cap pistol and was facing his brother, Gary, who was some eight to ten feet away. Gary began to advance towards Ronnie and Ronnie grasped the pistol by the barrel and with the butt up swung it over his right shoulder pretending that he was going to "knock Gary out". Unfortunately at this time Robert apparently suddenly stood up behind Ronnie and the pistol struck Robert in the eye causing the injury complained of. It was apparently the hammer of the toy pistol which did the damage. Petitioner alleged that Gary was guilty of negligence in engaging in a game that was too rough for Robert; that he failed to properly observe the whereabouts of Robert and failed to warn Ronnie that Robert was directly behind him while Ronnie was swinging the pistol "in a simulated attack upon Gary". Petitioner alleges negligence on the part of Mrs. Thibodeaux in that she failed to properly supervise the playing of the children; that she allowed the children to play with a toy pistol with a "raised knife blade sight and a jagged upright hammer"; and that she failed to secure prompt medical attention for the injured child.
The Lower Court held Mrs. Thibodeaux negligent in that she failed to exercise proper care, supervision and discipline over the boys, and therefore rendered judgment in favor of petitioner and against the defendant insurance company.
The toy pistol which was introduced into evidence was of the "single shot" variety which measured from the tip of its barrel to the tip of the butt approximately eight inches. The sight on the end of the barrel which was described by petitioner as "knife sharp" had a width of approximately one-sixteenth to one-eighth inches, and is of the usual kind found on these toy pistols. The "jagged trigger" was also of the kind which is found on these toys. The toy pistol was no different than those which are received each Christmas morning under the trees of millions of young children in this country. It is universally accepted as a child's play thing. There is no question in our minds but that young Ronnie could not be held guilty of negligence because of his tender age. Although his older brother, Gary, might be held guilty of negligence, he could not be held to as high a degree of care as are older persons.
In Sutton v. Champagne, 141 La. 469, 75 So. 209, the Supreme Court held a twenty-two calibre rifle which caused the death of a little Negro girl a dangerous instrumentality, and rendered judgment against the parent of the young boy who shot the young girl.
In Marionneaux, Tutrix v. Brugier, 35 La.Ann. 13, a gun containing only powder and wadding, but no bullet, was held to be a dangerous instrument when a young boy aged thirteen discharged the gun on the public thoroughfares of the city.
In Mullins v. Blaise, 37 La.Ann. 92, a father was held liable when his six year old son fired a Roman candle into the midst of a number of children who had gathered to witness the shooting of the fireworks.
We believe that all of the above named instruments, i. e., the twenty-two calibre rifle, the gun containing powder and wadding and the Roman candle are inherently dangerous instrumentalities and that they should not be handled by children of tender years. On the other hand, in Phillips v. D'Amico, La.App., 21 So.2d 748, the Court, after reviewing the above cited cases stated as follows:
"From these cases we draw the conclusion that a parent is liable if his minor *451 child, old enough to be guilty of negligence, causes damage by using a dangerous instrumentality under circumstances under which there is reason to believe that damage may result, and that even if the instrumentality is not inherently dangerous, nevertheless there is liability on the part of the parent if the child uses it in a negligent or careless manner.
"Of course, if the instrumentality is not inherently dangerous and there is no negligence in the manner of its use, then there is no liability even though, because of accident, damage is caused to some one else. As recognizing this rule, we cite Toca v. Rojas, 152 La. 317, 93 So. 108 and Wagner v. Barbin, 12 La.App. 640, 125 So. 766.
"In the first of these cases, Toca v. Rojas, young Rojas had been fishing. He had a fishing line and pole in his hand and, apparently, was winding the line around the pole by swinging it in the air. He was on a pathway which though `frequently used by pedestrians, * * * was not designed for, nor was it regarded as, a public thoroughfare.' (152 La. 317, 93 So. 112.)
"The Court held that a fishing rod and line is not inherently dangerous and that under the circumstances there was nothing careless in the manner in which young Rojas had handled it, and that, therefore, there was no liability.
"In the second of the two cases just above cited, a `sling-shot' was involved. It was being used by a young boy 14 years of age. He had discharged a rock into the air and this rock, in falling, had struck the plaintiff's daughter in the eye. The court held that there was no liability in the defendant for the reason that `there was not any evidence introduced showing that the `sling-shot' was a dangerous weapon' (12 La.App. 640, 125 So. 767) and that the son of the defendant had not been careless in the manner in which he had used the instrument."
The Phillips case involved an air gun which was shot by a boy ten or eleven years old and struck a youngster ten years old. In that case the court held the parent responsible in that there was fault either of the father in permitting the son to use the gun or of the son in using a dangerous instrumentality under circumstances rendering it probable that damage may result or in using the gun negligently or carelessly if the gun was not in itself negligent.
The Lower Court, in the case before us, apparently based its decision upon Mullins v. Blaise, which involved the Roman candle. We are in accord with this decision, but it is inapposite to the case at bar.
A toy pistol, such as the one introduced into evidence, is a universal and normal play thing of children of tender years. Certainly Mrs. Thibodeaux cannot be held at fault for permitting the children to play cowboys. Nor do we believe that Mrs. Thibodeaux failed to exercise proper supervision and care over the playing of the children. While she had been watching her "favorite" television program for some time prior to the accident, she testified that she could hear the children playing on the back porch and everything was apparently all right. Young Gary Thibodeaux testified that prior to the accident Robert was lying on the floor behind Ronnie and he could not see him, and he did not see him until Ronnie swung his arm back and hit Robert in the eye.
Although some time elapsed in securing medical attention for young Robert, he was brought to Dr. Gerald F. Joseph who gave him treatment for the injury. It was subsequently necessary to remove the injured eyeball in order to save the other eye. Dr. Joseph testified that even if he were present at the time of the accident so as to render immediate treatment, the right eye of young Robert could not have been saved.
*452 We feel that the Lower Court erred in rendering a judgment in favor of petitioner. The toy gun is not an inherently dangerous instrumentality, and we find no negligence on the part of either Mrs. Thibodeaux or her son, Gary.
For the reasons hereinabove assigned the judgment of the Lower Court will be reversed and there is judgment herein in favor of defendant and against petitioner dismissing petitioner's demand, with the right retained in petition to recover up to a maximum of Two Hundred Fifty and No/100 ($250.00) Dollars medical expenses upon furnishing due proof thereof.
All costs shall be paid by petitioner.
Judgment reversed.