CHARLES EUGENE JACKSON, A MINOR, ET AL *v.*
LLOYD C. McCUISTON III, A MINOR, ET AL

5-5105                                        448 S. W. 2d 33

Opinion delivered December 22, 1969

*Rieves & Rieves,* for appellants.

*Hale & Fogleman,* for appellees.

LYLE BROWN, Justice. This appeal resulted from the

granting of a directed verdict in favor of defendants at the close of plaintiffs' testimony in a tort case. Charles Eugene Jackson, a minor, and his father, Charles E. Jackson, Sr., sued the McCuistons for injuries caused young Jackson (called Gene throughout the trial) when his leg got caught in a tractor-propelled stalk cutter ("bush hog") operated by the defendant minor, Lloyd C. McCuiston III. Young Lloyd was employed on the farm of his father and grandfather, who operated as a partnership under the name of L. C. McCuiston & Son. The single point advanced for reversal is that the trial court erred in directing a verdict for the defendants.

Young Gene Jackson had just turned nine years of age at the time of the accident. His father was a month-to-month renter on the McCuiston farm and had lived there with his family during Gene's entire life. Lloyd McCuiston III was almost fourteen years old. The two boys were close companions. The McCuiston farm was mechanized and young Lloyd had been trained to operate several types of tractors. On the occasion of the accident, young McCuiston was engaged in cutting cotton stalks. The cutter itself roughly resembled a single-blade rotary lawnmower excepting it was much larger. The cutter was attached to an Allis-Chalmers D17 farm tractor which pulled and powered the mower. Lloyd III was not cutting each row of stalks as he came to it; rather he was on each turn leaving an area of about ten rows of uncut stalks between the cleared areas. Gene Jackson had followed Lloyd III to the field and was playfully running behind the tractor and cutter. When the driver would reach the end of a row and make his turn, Gene would cut across the uncut "turn row" and again resume the frolic of following the machinery. Lloyd III was aware of Gene's presence; he did not tell him to leave the field; he did not tell Gene to quit running behind the machinery; on one occasion Lloyd III thought Gene was dangerously close and motioned him to move back, and Gene complied. After that warning, according to Lloyd, four rows were cut before the ac-

cident occurred which necessitated amputation of the left foot. Gene got too close to the cutter and his foot was thrust under the shield of the cutter and into the blade. Gene's activity at the precise moment of the tragedy is not known. That is because he was not permitted to testify since he was adjudged too immature; also, the driver did not observe Gene's approach at the time of the accident. Lloyd was bound to have observed Gene almost immediately thereafter because he was able to stop the tractor so quickly after Gene's fall that the wheel of the cutter did not run over Gene's foot. Regardless of the precise movement which Gene made that caused his foot to become entangled, the underlying cause of the mishap was his dangerous proximity to the instrumentality. He likely stumbled or tripped, or conceivably he might have attempted to mount the cutter. Irrespective of those possibilities, he was so close as to endanger his own life and limb and being in that position was the cause of his injuries. Whatever incident may have triggered the fall was secondary.

There were no witnesses to the accident other than the two boys. Plaintiffs rested their claim of liability upon the testimony of the defendants (being called by plaintiffs), Lloyd III and his father. We have substantially recounted young Lloyd's testimony. Lloyd's father conceded that the stalk cutter was dangerous when being operated, more dangerous than some equipment, less dangerous than other machinery on the farm. Of the propensity of the cutter with respect to danger, he said this:

Q. But to answer my question: Is it poor judgment to permit one to remain near a stalk cutter while it is being operated; is that correct?

A. Yes; I would say probably so.

The case was tried on the theory that Lloyd III was negligent in failing to keep a proper lookout for Gene

and in failing to warn him of the inherent danger of getting too close to the machinery. At the conclusion of plaintiffs' testimony and after extended review in chambers the trial court concluded there was no proof of any act or omission on the part of Lloyd III which contributed to cause the mishap.

In resolving the propriety of the directed verdict we must of course take that view of the evidence most favorable to plaintiffs and see if there is any substantial evidence on which the jury could have based a finding of negligence. If the answer is in the affirmative then the case should have gone to the jury. *Hardeman* v. *Hass Co.,* 246 Ark. 559, 439 S. W. 2d 281 (1969). If the evidence permits of more than one reasonable conclusion, that conclusion is for the jury and not the court. *St. Louis Southwestern Ry. Co.* v. *Cone,* 111 Ark. 309, 163 S. W. 1170 (1914). We think the evidence and circumstances in this case (the substance of which we have recited) presented a jury question as to whether defendants' driver was negligent. In reaching that conclusion we were faced with the problem of resolving the standard of care owed by the tractor operator to the minor plaintiff. Our precedent nearest to the situation at hand is *Harrelson* v. *Whitehead,* 236 Ark. 325, 365 S. W. 2d 868 (1963). There we held a minor operator of a motor vehicle to the same standard of care as an adult. Of course that standard is an exception to our general rule that a minor owes that degree of care which a reasonably careful minor of his age and intelligence would exercise under similar circumstances. *Gates* v. *Plummer,* 173 Ark. 27, 291 S. W. 816 (1927).

The trend in the law points to further relaxation of the general rule.

"An exception [to the general rule] may arise where the child engages in an activity which is normally undertaken by adults, and for which adult qualifications are required." 2 Restatement of Torts 2d § 283 A c.

"There is more support for the proposition that whenever a child, whether as plaintiff or as defendant, engages in an activity which normally is one for adults only, such as driving an automobile or flying an airplane, the public interest and the public safety require that any consequences due to his own incapacity shall fall upon him rather than the innocent victim, and that he must be held to the adult standard, without any allowance for his age." Prosser Torts 3rd Ed. HB, p. 159.

"It is our conclusion that courts should and probably will (for the most part) hold the child defendant who is engaging in dangerous adult activities (such as driving a car) to the standard of the reasonably prudent adult." 2 Harper & James Torts, p. 927.

The Minnesota court, citing Restatement, has extended the requirement of adult care to a minor when he is operating a motorboat. *Dellwo* v. *Pearson,* 107 N. W. 2d 859 (1961).

We find it unnecessary in this case to adopt a rule in such broad form as stated by the cited authorities. For the present we think it wiser to solve the problem as it is presented in the setting of a given case. In the case before us the adult defendants trained the minor defendant in the operation of a dangerous machine—dangerous particularly to third persons who found themselves in proximity during operation. Young McCuiston regularly operated all different types of farm tractors since he was twelve years of age. Unquestionably he was performing a job normally expected to be done by adults. Since he had been made proficient in the operation of the equipment it was his responsibility, and that of his masters, to see that he was apprised of those safeguards for others which would be possessed by an adult operator. If he is negligent in that important aspect of the operation then neither the minor operator

nor his master should be permitted to invoke the aid of his minority. We therefore conclude that within the ambit of this case, the defendant operator should be held to the standard of care of a reasonably careful adult.

Reversed

FOGLEMAN, J., disqualified.