**Rothie Louise HARRIS, Appellant,**

v.

**PACIFIC FLOOR MACHINE MANU-FACTURING COMPANY, a corporation, Appellee.**

**No. 87–1322.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1988.

Decided Sept. 7, 1988.

Bill B. Wiggins, Fort Smith, Ark., for appellant.

Woody Bassett, Fayetteville, Ark., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This is a diversity action brought under Arkansas law on theories of negligence and products liability. Rothie Louise Harris was injured while using gasoline along with a floor buffer made by Pacific Floor Machine Manufacturing Company to strip paint off of a floor in a bathroom in the elementary school in Cedarville, Arkansas. After several gallons of gasoline had been poured on the floor, Harris started the buffer, creating a spark in its electric motor, which ignited the gasoline fumes and caused an explosion and fire in which she suffered severe burns over 40 per cent. of her body.

The case was submitted to the jury on special interrogatories, and the jury found for defendant on each claim. Harris argues on appeal that the verdict is flawed because of errors in the jury instructions and in the exclusion of certain evidence. We agree that one of the instructions on the products-liability claim was erroneous,

so we reverse in part and remand for a new trial on that claim. But we find no error affecting the two negligence claims, and we therefore affirm the judgment in that respect.

## I.

■ Products liability is governed by statute in Arkansas, and one element of the cause of action is that the product be supplied in a defective condition which makes it unreasonably dangerous. Ark. Code Ann. § 4–86–102(a)(2) (1987). The definition of "unreasonably dangerous" is set out in Ark.Code Ann. § 16–116–102(7) (1987):

> "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product, assuming the ordinary knowledge of the community or of similar buyers, users, or consumers as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess. However, as to a minor, "unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by an ordinary and reasonably careful minor considering his age and intelligence.

On July 15, 1982, the date Harris was injured, she was seventeen years old, and was therefore a minor according to the law of Arkansas. See Ark.Code Ann. § 9–25–101 (1987). At trial she also put on evidence that she was of below-average intelligence. For instance, one of plaintiff's expert witnesses, a clinical psychologist, testified that on the basis of tests conducted in May 1986, Harris had verbal skills in the ninth percentile, which he described as in the upper limits of borderline retardation, and nonverbal skills in the thirtieth percentile, which is in the average range. Tr. 473. This witness also testified that Harris read at the fifth-grade level. Tr. 474.

At the close of all the evidence, Harris proffered a jury instruction on the meaning of "unreasonably dangerous" that simply quoted the statutory definition in full. Tr. 529–33; Designated Record at 97. The District Court rejected this instruction and gave the jury instead an instruction that tracked only the first sentence of the statute, omitting any reference to the legal definition of unreasonably dangerous as to a minor.[1] In making this ruling, the District Court said, "The Court did consider all those things [and] has decided, there's no evidence this young lady is anything other than a normal seventeen-year-old girl. I saw her testify. I heard her testifying...." Tr. 530–31.

■ Harris claims that it was error to refuse her instruction defining unreasonably dangerous as to a minor, and we agree. In cases where the rule of decision is supplied by state law, our normal practice is to defer to the state-law ruling of a district judge who sits in the state whose law is controlling. See, *e.g., Economy Fire & Casualty Co. v. Tri–State Ins. Co.,* 827 F.2d 373, 375 (8th Cir.1987) (we will overturn such state-law rulings only if "fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state-court opinion.") Thus the District Court's rejection of the proposed instruction on Arkansas law here comes to us with a healthy presumption of correctness. But we think this is one of those unusual cases where the presumption does not lead to affirmance. First, the proposed instruction simply quoted the language of a state statute; thus it must be a correct statement of Arkansas law. Second, we have a definite and firm conviction that the reason given for rejecting the instruction was insufficient. The Court stated that the plaintiff

---

1. The Court's instruction was framed in terms of the ordinary buyer of a product, leaving out the statute's reference to "consumer" and "user." There was no evidence at trial that Harris bought the floor buffer; she was merely a user. At the new trial, the instruction should include the term "user" as it is found in the statute.

was nothing more than a "normal seventeen-year-old girl," Tr. 530, at the time of the accident; in other words, she was a normal minor. We think this is a reason for giving the instruction on unreasonably dangerous as to a minor, not for rejecting it. We hold that it was prejudicial error to refuse the instruction, and that the products-liability judgment must be reversed and remanded for a new trial under proper instructions.

■ The defendant argues that the standard with respect to a minor should be the same in products liability as it is in negligence. For purposes of determining whether a minor is negligent, a jury must consider whether that minor used the degree of care that a reasonable minor of the same age and intelligence would use in similar circumstances. *Gates v. Plummer*, 173 Ark. 27, 291 S.W. 816 (1927). But if the minor is engaged in a dangerous activity usually performed only by adults, he is held to the adult standard of care. *Purtle v. Shelton*, 251 Ark. 519, 474 S.W.2d 123 (1971). Similarly, the defendant argues, the definition of unreasonably dangerous as to a minor should not apply in a case where a minor is performing a dangerous activity usually engaged in only by adults, and Harris (defendant says) was engaged in such an activity here. We have no need to reach this argument on the record now before us. The only evidence in this record is that minors regularly operated the floor buffer in the Cedarville schools. There would be no warrant for an inference that this is an activity normally engaged in only by adults, and therefore no occasion to decide whether the state-law exception to the usual rule as to negligence on the part of minors has anything to do with this products-liability case.[2]

## II.

Harris also appeals the adverse verdicts on her negligence claims, arguing that the District Court erred (1) by refusing to instruct the jury according to her proffered instruction on a minor's standard of care in negligence, (2) by refusing to permit her expert witness to give an opinion on the ultimate question of fact on her claim that the buffer's warning was inadequate, and (3) by permitting counsel for one of the defendants at trial, who is not a party to this appeal, to make an improper and prejudicial closing argument to the jury.

■ 1. The first argument is easily answered. The jury was instructed on both of plaintiff's theories of negligence and was given a special interrogatory on each. The interrogatories asked:

1. Do you find from a preponderance of the evidence that Pacific Floor Machine Manufacturing Company failed to provide a warning in a form reasonably expected to catch the attention of a reasonably prudent person under the circumstances and that such failure was a proximate cause of the occurren[ce]?

2. Do you find from a preponderance of the evidence that Pacific Floor Machine Manufacturing Company failed to use ordinary care in designing the floor buffer machine and that such failure was a proximate cause of the occurrenc[e]?

Tr. at 572. The jury answered each question "no." These findings are entirely sufficient to uphold the judgment respecting the negligence claims without even reaching the issue of the plaintiff's comparative fault, which is the issue on which the minor's standard of care was relevant. Thus the jury's verdict mooted the issue of what legal standard governed Harris's conduct as to these two negligence claims.

■ 2. The District Court refused to permit the plaintiff's expert witness on the adequacy of warnings to give an opinion on the ultimate question of fact regarding the warning on the buffer. Instead, the Court permitted the expert only to explain the criteria by which he would form such an opinion, and ruled that the jury could then apply the criteria to the facts of this case for itself, without the assistance of an expert's opinion. Tr. 390–97. We find no

---

**2.** Harris also argues that the Court erred in granting defendant's motion *in limine* to exclude her evidence of other lawsuits arising from accidents involving other floor buffers made by other manufacturers. We see no abuse of discretion in this ruling.

abuse of discretion in this ruling. It was permissible for the District Court, which has the initial and primary responsibility for ruling on questions of admissibility, to conclude that once the expert explained to the jury what he would consider and how he would go about forming an opinion on the adequacy of the buffer's warning label, the jury was in a position to apply those criteria for itself. Thus it had no need for further assistance from the expert in the form of an opinion on whether this particular warning was adequate. See Fed.R. Evid. 702.

■ 3. Finally, during closing argument counsel for Pacific Floor's codefendant read an Ann Landers article to the jury. In response to a reader's letter about her husband's injury while using a car jack in violation of its warning label, Ann Landers wrote:

> I'm sure that many of my readers will think if we can put a man on the moon and produce robots who do housework and build automobiles, surely we could make a jack that would be safe for all purposes. Wrong. There is no way we can make a jack or any other piece of equipment people-proof. If folks insist on taking chances, refuse to follow directions and ignore warnings nothing can save them.

Tr. 548–49.

Plaintiff objected, claiming this was improper argument. The Court overruled the objection, and we find no error in that ruling. Part of the theory of the defense was that plaintiff should have known better than to operate the buffer in a room full of gasoline and gasoline fumes, and there were facts to support the theory. Reading this letter was an argument in support of the defense's version of the facts. There is nothing improper in a civil case with a lawyer's citing widely recognized authorities during a closing statement (though Shakespeare and the Bible come more readily to mind than Ann Landers); on the contrary, this is sometimes an effective, and certainly a time-honored method of argument. The Court did not abuse its broad discretion to oversee clos-

ing argument by overruling this objection. The letter was only a general observation on human behavior, not a comment on the particular facts of this case.

## III.

The judgment is reversed with regard to the products-liability verdict and affirmed in all other respects. This cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

LAY, Chief Judge, concurring.

This court holds that the district court did not err in excluding the opinion of the plaintiff's expert on whether the buffer was defective and unreasonably dangerous because of inadequate warning.

The question of admissibility of evidence is a matter that lies within the sound discretion of the trial judge, and should not be overruled unless there has been a clear abuse of discretion. *Strong v. E.I. Du-Pont de Nemours Co.*, 667 F.2d 682, 685 (8th Cir.1981). For that reason I do not dissent to this court's ruling on the admissibility of the expert opinion. However, I would hope that our holding will not be considered as precedent to exclude expert testimony in the form of an opinion on whether a product may be defective and unreasonably dangerous absent adequate warning. Such knowledge is not within the general knowledge of a lay jury and should ordinarily be admissible as expert opinion.

The testimony plaintiff sought was subject to cross-examination, and under such circumstances the jury could have decided how much weight should have been given the evidence. In considering the question of whether expert testimony would be useful to a jury in determining ultimate liability issues, Judge Weinstein in his treatise states:

> Because of the Federal Rules emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise

favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations.

3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] at 702–14—702–15 (1987) (footnote omitted).

### Closing Argument

In view of the fact a retrial is necessitated I also question whether the trial court should have allowed defendant's counsel to read a direct quote from Ann Landers' column of a newspaper. I would agree counsel should be given wide latitude in closing argument and should be able to use allegory or resort to metaphor borrowed from literature, current events and the like.[1] I am certain the average juror would not put much stock in Ann Landers' opinion on product liability or safety. In this area she has about as much scientific credibility as one's horoscope. Yet because of her notoriety there could be individual jurors who feel she speaks with unusual experience and might possibly be guided by her advice. Clearly her opinion, let alone her news column, could not be admitted into evidence. Under the circumstances I question whether counsel should have been able to read her verbatim opinion in closing argument. Since the case is to be reargued I would think it more in the sound exercise of discretion for the trial court to exclude the reading of the statement the next time around.

---

1. Counsel could have argued the essence of what she said without attributing the quote to her. It seems somewhat ironic to me that we indirectly approve the use of a news columnist's opinion on product safety but exclude from evidence an opinion by a qualified scientific expert.